**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TYREE WILLIAMS, | : |
| Plaintiff, | : |
| | : Civil Action |
| v. | : |
| | : No.2:20-CV-02219-AB |
| TEMPLE UNIVERSITY – OF THE | : |
| COMMONWEALTH SYSTEM | : |
| OF HIGHER EDUCATION, et al. | : |
| | : |
| Defendants. | : |

## <u>ORDER</u>

AND NOW, this＿＿day of＿＿＿＿＿＿＿＿＿＿＿＿＿, 2021, upon

consideration of the Defendants' Partial Motion for Summary Judgment, and the

response and reply thereto, and any argument ordered by the Court, it is hereby

**ORDERED** that the Motion is **GRANTED**, partial summary judgment is entered in

favor of Defendants, and Counts I, II, III, IV, V, VI, VII, VIII, and IX are **DISMISSED**

**WITH PREJUDICE**.

BY THE COURT:

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
The Hon. Anita Brody

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYREE WILLIAMS, | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No.2:20-CV-02219-AB |
| | : | |
| TEMPLE UNIVERSITY – OF THE | : | |
| COMMONWEALTH SYSTEM | : | |
| OF HIGHER EDUCATION, et al. | : | |
| | : | |
| Defendants. | : | |

## <u>DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT</u>

Defendants, Temple University – Of the Commonwealth System of Higher Education and Temple University Police Officers Sabir and Mitchell (collectively, "Defendants" or "Temple"), by and through their attorneys, hereby move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to enter partial summary judgment in their favor and against Plaintiff, Tyree Williams ("Plaintiff" or "Plaintiff") for the following reasons:

- Plaintiff's adverse employment action was justified due to his failure to return to work from leave and his failure to provide a medical certification, ( Counts I-VIII and X);

- There is no temporal proximity between Plaintiff's FMLA leave and his termination (Counts VIII – X);

- Plaintiff frustrated the interactive process with Temple by not considering alternative accommodations offered and not engaging with Temple, (Count VIII and X); and

- Plaintiff offers nothing more than conclusory allegations and his own subjective beliefs to support his claims, ( I, II, III, IV, V, VI, VII, VIII, IX, X and XIII);

The specific bases for this Motion are more fully set forth in the accompanying Memorandum of Law, Statement of Undisputed Material Facts, and Exhibits, which are incorporated herein by reference.

**WHEREFORE**, Defendants respectfully request that their Motion be granted, summary judgment be entered in their favor, and Counts I, II, III, IV, V, VI, VII, VII, VIII, and IX, be dismissed with prejudice.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

DATED: October 7, 2021

/s/ Joe H. Tucker
Joe H. Tucker, Jr., Esquire
Brock J. Atkins, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYREE WILLIAMS, | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | |
| | : | No.2:20-CV-02219-AB |
| TEMPLE UNIVERSITY – OF THE | : | |
| COMMONWEALTH SYSTEM | : | |
| OF HIGHER EDUCATION, et al. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff, Tyree Williams, alleges the kitchen sink of claims against the Temple Defendants, ranging from illegal termination based on race to assault and battery. The majority of his claims should be dismissed as a matter of law and because there is no actual evidence to support his claims; his subjective beliefs are not enough to overcome summary judgment. The very purpose of summary judgment is to pierce the pleadings and put Plaintiff to his proofs. Plaintiff falls short in meeting this burden.

Plaintiff was terminated from Temple University's Office of Undergraduate Admissions not because of his disability or his race, but because he never returned to work after exhausting his FMLA leave and receiving five (5) extensions of his leave. Plaintiff alleges that he was subjected to repeated incidents of racial animus and micro-aggressions, however, beyond his own subjective beliefs, Plaintiff cannot identify any evidence or material facts that suggest his race or disability provide a basis for his claims.

Indeed, the video of the alleged altercation that forms the basis of Plaintiff's excessive force and assault and battery claims confirms that there was no force used <u>at all</u>.

Plaintiff complains of a multitude of interactions he had with Temple while ignoring the role his actions had in his termination and Temple's actions. By way of example, three (3) separate and independent organizations contacted his supervisors to complain about his demeanor and professionalism, yet Plaintiff maintains that Temple's attempts to provide him communication coaching is evidence of racial animus. He views everything with a lens that he was being victimized and tokenized by Temple, but willfully ignores his own actions or the needs of his former employer. Ultimately, Temple terminated Plaintiff for a legitimate and non-discriminatory reason To the extent that Plaintiff is able to sustain a *prima facie* case for any of his assorted claims, he has failed to adduce any evidence that remotely suggest Temple's legitimate and non-discriminatory reasons were pretextual. Moreover, to argue that Temple was motivated by racial animus after Temple accommodated him in every way it could, including providing him extension after extension on his medical leave, while holding his position open beyond what was legally required, while his department was burdened by his extended departure, but still participated in two full day mediations with him so that Plaintiff would feel comfortable returning to work, is misguided and illogical.

Plaintiff's Complaint is littered with vague and unfounded allegations that all should be dismissed with prejudice. Therefore, Plaintiff's claims under the ADA, FMLA, PHRC, Section 1981, and Title VII must be dismissed with prejudice[1].

---

[1] Temple is not moving for summary judgment on the defamation and privacy violation claim in Counts XI and XII.

## II.    <u>FACTS</u>

On May 10, 2020, Plaintiff filed this lawsuit initially asserting thirteen (13) causes of action (doc. 1):

| | |
|---|---|
| Count I | Title VII – Terms and Conditions |
| Count II | Title VII – Hostile Work Environment |
| Count III | Title VII - Retaliation |
| Count IV | Section 1981 – Racial Discrimination |
| Count V | Section 1981 – Hostile Work Environment |
| Count VI | Section 1981 – Retaliation |
| Count VII | ADA – Disability Discrimination |
| Count VIII | FMLA – Retaliation |
| Count IX | Section 1983 – Excessive Force |
| Count X | PHRA – Racial Discrimination, Retaliation, Disability Discrimination |
| Count XI | Defamation |
| Count XII | Privacy Violation |
| Count XIII | Assault and Battery |

Defendants incorporate by reference the Statement of Undisputed Materials Facts filed contemporaneously herewith.

## III.    <u>ARGUMENT</u>

### A.    <u>Standard for Summary Judgment</u>

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment against

a party who fails to offer admissible evidence sufficient to establish the existence of every element essential to that party's case for which that party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 327 (1986) (stating that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'") (citation omitted). Although a defendant bears the initial responsibility of asserting the basis for its motion, the defendant is not required to negate the plaintiff's claim. Rather, the defendant must only point out that there is an absence of evidence to support the plaintiff's case or, alternatively, offer affirmative evidence which demonstrates that the plaintiff cannot prove his or her case. Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61, 69 (3d Cir. 1996). To survive a summary judgment motion, therefore, the non-moving party must come forward with specific admissible and credible evidence supporting each element essential to that party's case; mere conclusory allegations or denials are not enough. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Matsushita Elec.Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Indeed, to survive summary judgment, "there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1308 (3d Cir. 1995).

As detailed below, the undisputed facts dictate that Plaintiff's disability and race discrimination claims fail as a matter of law. Thus, Defendants' motion should be granted, and summary judgment should be entered in favor of Defendants on the majority of Plaintiff's claims.

**A.** **PLAINTIFF WAS TERMINATED FOR A LEGITIMATE AND NON-DISCRIMINATORY REASON.**

       **1.** **Defendants Never Discriminated Against Plaintiff.**

In order for a plaintiff to establish a *prima facie* case for discrimination, Plaintiff must first show, by a preponderance of the evidence that: (1) he belonged to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) circumstances that raise an inference of discriminatory action. Id. at 802; Leblanc v. Hill Sch., No., 14-1674, 2015 U.S. Dist. LEXIS 2981 at *18-19 (E.D. Pa. Jan 12, 2015). If a plaintiff is able to establish a *prima facie* case for discrimination, the burden shifts to Defendants to advance a legitimate, nondiscriminatory, or non-retaliatory reason for its conduct. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If Temple meets this relatively light burden, the burden of production returns to Plaintiff, who must show by a preponderance of the evidence that Defendants' proffered reasons were pretextual. Id. at 804-05.

       **a.** **Plaintiff's Title VII and Section 1981 Claims Fail Because Temple Had a Legitimate and Non-Discriminatory Reason for Hs Termination**

In evaluating a plaintiff's claims pursuant to Sections 1981, courts have established that the legal analysis requires the same assessment as a Title VII claim. Burlington v. News Corp. 759 F. Supp. 2d 580, 590 (E.D. Pa. 2010). Thus, absent direct evidence of discrimination, as in this case, Plaintiff's discrimination claims are analyzed under the burden shifting analysis of McDonnell Douglas.

Assuming *arguendo* that Plaintiff has satisfied the first three elements of a *prima facie* showing for a discrimination claim[2], his claims still fail because he cannot establish a causal connection exists between his purported complaints to the EOC, his supervisors, or the mediators and Temple's actions. In <u>Fitzgerald v. Amtrak</u>, the plaintiff could not establish his underlying 1981 claim because he could not prove that any decision makers considered race in connection with an adverse employment action.  2016 U.S. Dist. LEXIS 91114 at * 14, 27.   <u>See also</u> <u>Estate of Oliva v. N.J., Dept. of Law &Pub. Safety, Div. of State of Police</u>, 604 F. 3d 788, 798 (3d Cir. 2010). The <u>Fitzgerald</u> court found that the plaintiff provided nothing more that "his bald contention that `every selection made by [the alleged decision maker] after August 2012 was retaliatory in view of [the alleged decision maker's] admission that he was aware that Mr. Fitzgerald had complained about discrimination.'" <u>Fitzgerald</u>, 2016 U.S. Dist. LEXIS 91114 at *29. The court held that "[p]laintiff provided] no evidence (beyond mere assertion in his brief that [the alleged decision maker] was even aware that Plaintiff complained about discrimination prior to his subsequent decisions in 2012 to not promote [p]laintiff" <u>Id.</u>

If Plaintiff was able to make out a *prima facie* case, the burden switches to Defendants to demonstrate a legitimate, non-discriminatory explanation for Plaintiff's termination. Defendants' burden here is "relatively light" and the explanation "must simply 'permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" <u>Albright v. Trs. of the Univ. of Penn</u>., No. 19-00149, 2019 U.S. Dist. LEXIS 180654 (E.D. Pa. Oct. 18, 2019), at *19- 20 (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994). Once that burden has been satisfied, it is the plaintiff's

---

[2] Given the number of complaints Temple received about Plaintiff and the need for communication coaching and the PIP, it is arguable that Plaintiff was not qualified for his position.

burden to prove that the stated basis was "merely pretextual." Id. at *20 (citing McDonnel Douglas, 411 U.S. at 804). Plaintiff's burden here is "difficult" and requires him to prove that "each" of Temple's bases for termination "was either a post hoc fabrication or otherwise did not actually motivate the employment action". Fuentes, 32 F.3d at 764, 765; see also Albright, 2019 U.S. Dist. LEXIS 180654, at *20-21.

Here, Plaintiff cannot establish a *prima facie* case for discrimination because he cannot satisfy the fourth prong and adequately raise an inference of discriminatory conduct. Plaintiff alleges he was "intentionally subjected to different and worse terms and conditions of his employment by defendant, based on his race, than his similarly situated Caucasian peers." (Comp. ¶ 160). Plaintiff offers no evidence to support this bald assertion. Plaintiff has adduced no record evidence to support the contention that he was subjected to worse conditions because of his race or that he was treated differently from his Caucasian peers. Moreover, Plaintiff has not even adduced evidence that he was sufficiently similarly situated with his Caucasian peers other than his own beliefs and generalizations. It is axiomatic that subjective beliefs of discrimination are not enough to overcome summary judgment. See Robinson v. National Medical Care, 897 F. Supp. 184, 187 (E.D. Pa. 1995). As such, Plaintiff fails to satisfy the *prima facie* case for discrimination.

Additionally, Temple had a legitimate and non-discriminatory reason for Plaintiff's termination. After Plaintiff had been on leave for almost seven months and received five leave extension under Temple's leave of absence policy and completing the requisite medical certifications to do so each time, Plaintiff failed to return to work as required by April 7th, extended to April 29th, and then finally extended to May 6th. (See Exhibits "B" ad

"DD").  As such, Plaintiff cannot meet his subsequent burden because Defendants had legitimate and nonretaliatory reasons for his termination. Whether or not Plaintiff complained to the EOC and the mediators about his supervisors, he still needed to comply with Temple's return to work procedures.

> **b.** **Plaintiff's ADA Claim also Fails Because Temple Had a Legitimate and Non-Discriminatory Reason for His Termination.**

In addition, Plaintiff's ADA discrimination claim is also analyzed under the same McDonnell Douglas framework.  See Isley v. Aker Phila. Shipyard, Inc., 275 F. Supp. 3d 620, 627 (E.D. Pa. 2017) (McHugh, J.) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).  To make out a prima facie case of disability discrimination, Plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and, (3) he has suffered an otherwise adverse employment decision as a result of discrimination. See Williams v. Phila. Hous. Auth. Police Dep't., 380 F.3d 751, 759 3d Cir. 2004).  Plaintiff's ADA claim fails because Temple had a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff will not be able to show that the stated basis was pretextual.

Plaintiff's allegations that Temple "refused to engage in the interactive process with plaintiff to come up with a reasonable accommodation" are patently false.  (Comp. ¶ 186). Pursuant to the ADA, to facilitate the reasonable accommodation requirement, employers and employees are required to engage in an interactive process to identify the employee's limitations resulting from a disability and the kinds of accommodation which would be both appropriate and feasible. 29 C.F.R. § 1630.2(o)(3) (the "interactive process" refers to the

process by which an employee who has requested an accommodation for a disability and his or her employer identify the precise limitations resulting from the employee's disability and the potential reasonable accommodations that could overcome those limitations); Jacoby v. Bethlehem Suburban Motor Sales, 820 F. Supp. 2d 609, 622 (E.D. Pa. 2011) (finding that plaintiff caused the breakdown of the interactive process by the failing to communicate the need for an accommodation, and even if properly communicated, plaintiff's requested accommodation was unreasonable).

Both parties are required to assist in the search for appropriate reasonable accommodations and to act in good faith. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999). An employer can show its good faith by, for example, asking the employee what he specifically wants, showing some sign of having considered the employee's request, and offering and discussing some available alternatives when the request is too burdensome. Id. at 317. As for an employee, he must provide clear notice to the employer that he has a disability and is seeking an accommodation for that disability. Id., at 313. The process "must be interactive because each party holds information the other does not have and cannot easily obtain." Id. at 316, citing Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997) ("employers will not always know what kind of work the worker with the disability can do, and conversely, the worker may not be aware of the range of available employment opportunities").

Here, after Temple rejected and countered Plaintiff's accommodation request to work from home as he saw fit because the:

> "admissions counselors to our directors, all the way up to me personally [Vice Provost Shawn Abbott] are the front line ambassadors for Temple University. As a result, we need to be on campus ready, willing, able and eager to meet with the prospective students, families and counselors who

visit us daily.  This cannot be done from home and we need to be available at all times we are not engaged in off-campus outreach and recruitment. We anticipate 50,000 visitors to Temple next year and our admission officers are the staff members Temple relies on heavily to give daily information sessions and provide one on one counseling to our visitors who want to learn more about the admission and financial aid process… Please know that I am not against working from home or flexible working hours. For certain positions within the Division of Enrollment Management, working from home and/or a more flexible working schedule is mutually beneficial as the nature of our work may benefit from solitude and/or involved limited or no face to face contact with either internal or external constituents. Our admission officers, however, are entirely front facing and mut engage daily, if not hourly with both internal and external constituents."

(See Exhibit "AA")

Plaintiff failed to continue to engage Temple in the interactive process. (See Exhibits "CC' and "DD"). By May of 2019, Plaintiff's ULOA had ended, he had already been out from work since the beginning of October, had been afforded several extensions, and was fully cognizant that he had to routinely provide medical certifications in order to either maintain his leave or return to work. (See Exhibits "R", "U", "X' and "BB"). For reasons unknown to Temple, Plaintiff severed his relationship with his certifying medical provider, Gustavo Klurfan. Between April 26, 2019 and May 6, 2019, Plaintiff essentially sat on his hands and did nothing to continue engaging Temple or return to his job.  Given his circumstances and desire to return to work, a possible solution was simply to return to work and accept Temple's proposed accommodation of working from home one day a month.  As he noted in his Complaint, Plaintiff had already returned to work on April 24th until April 26th without any agreed upon accommodations.  (See Comp. ¶ 187).

Temple required Plaintiff to provide the fitness to return to work documentation in accordance it's policy, and having failed to do so, and after Temple afforded him several extensions and an alternative accommodation, Plaintiff was appropriately terminated when he did not return to work. (See Exhibit "B").

13

Accordingly, Plaintiff' Title VII, Section 1981, and ADA claims for race discrimination in Counts I, IV, and VII of the Complaint must be dismissed with prejudice.

## 2. Defendants Never Retaliated Against Plaintiff.

Plaintiff' Title VII, Section 1981, and FMLA retaliation claims are all analyzed under the McDonnell Douglas burden shifting framework. The Third Circuit has directed that the legal standards for a retaliation claim under Section 1981 are generally the same as those applicable to a Title VII retaliation claim. See, e.g., Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36 (D.N.J. 1995) (noting that with respect to retaliation claims, "The Civil Rights Act of 1991 extended § 1981 to the reaches of Title VII."). Similarly, because "FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." Capps v. Mondelez Global, LLC, 847 F.3d 144, 151 (3d. Cir. 2017) ("Capps II"); Lichtenstein, 691 F.3d at 302. FMLA retaliation claims, then, are assessed under the burden- shifting framework established in McDonnell Douglas. See Capps II, 847 F.3d at 151.

Under this framework, if the plaintiff succeeds in making a *prima facie* showing, "the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action." Capps II, 847 F.3d at 152. If the defendant is able to do so, the "burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." Capps II, 847 F.3d at 152. The plaintiff must proffer sufficient evidence to allow the factfinder "to infer that the employer did not simply make a bad decision when it took action against an employee, but that the employers took that action for unlawful reasons." Davis v. Temple Univ. Hosp., Inc, 2015 U.S. Dist. LEXIS 154312 at *21. Ultimately, it is the plaintiff's burden to prove

"retaliatory intent." <u>Lichtenstein</u>, 691 F.3d at 302. And this is a "difficult burden". <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994).

> **a. Plaintiff's Title VII and 1981 Retaliation Claims Fail Because Plaintiff Did Not Suffer an Adverse Employment Action.**

To establish a *prima facie* retaliation claim under Title VII or § 1981, Plaintiff must show: "(1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." <u>Cardenas v. Massey</u>, 269 F.3d 251, 263 (3d Cir. 2001). Here, Plaintiff alleges that Temple retaliated against him for complaining of "racial discrimination in the form of informal complaints directly to his management, to defendant's EOC office, and to its human resources management…" (See Complaint, ¶ 170). Plaintiff further alleges he was subjected to a "hostile work environment, by false criticisms, intentionally denying his requests relating to improving diversity, false characterization of his performance and character, false discipline in the form of a directive to attend baseless communications training…" (<u>Id</u>., ¶ 171).

Plaintiff fails to establish the second and third prong for a *prima facie* case of retaliation under Title VII and 1981. Specifically, Plaintiff did not suffer an adverse employment action and there was no causal link between the alleged adverse employment actions and his protected activity. None of the examples Plaintiff referenced in his Complaint amount to actual adverse employment. He was never fined, or suspended, or demoted, rather he points to minor events as examples of retaliation. However, petty slights and trivial annoyances do not qualify as actionable retaliation. <u>See Burlington Northern Santa Fe Railway Co. v. White</u>, 548 U.S. 53, 69, [(2006). To the

extent that Plaintiff alleges his termination was in retaliation for a protected activity he engaged in, Temple has articulated a legitimate, nondiscriminatory reason for that action, as set forth in Section 1 above.

### b. Plaintiff's FMLA Retaliation Claim Fails Because His Termination was Not Causally Related to His Leave Request

Plaintiff cannot succeed on his FMLA retaliation claim because his termination is not causally related to his request for leave. Assuming Plaintiff can meet the showing of the first two elements of his claim, the question becomes whether his termination is causally connected to his request for FMLA leave. The Third Circuit has identified three factors to aid courts in making that determination: (1) close temporal activity between the events; (2) a record that the employer subjected the employee to ongoing antagonism; and (3) an employer's inconsistent reasons for termination. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000); see also Capps v. Mondelez Global LLC, 147 F. Supp. 3d 327, 336 (E.D. Pa. 2015) ("Capps I"). Plaintiff cannot make this showing.

First, Plaintiff began calling out of work in early October and requested leave beginning on October 26, 2018 and backdated to October 1, 2018. (Exhibits "L").  He exhausted his FMLA leave on January 17, 2019.  (Exhibit "Q").  He was not terminated until May 9, 2019. (Exhibit "B").  Given that six months had passed since the time Plaintiff requested leave and was terminated, there is no temporal proximity, let alone "close" temporal proximity, between his request for leave and his termination. See Capps I, 147 F. Supp.3d at 337 (noting Third Circuit decisions where three-week gaps and two-month gaps were not unusually suggestive); Albright v. Trs. of the Univ. of Pa., 2019 U.S. Dist. LEXIS 180654, at *35 (identifying Third Circuit decisions where two-month and three-

month gaps between the protected activity and adverse actions were not unusually suggestive); Ellison v. Oaks 422, LLC, No. 11-2943, 2012 U.S. Dist. LEXIS 34976, at *20-21 (E.D. Pa. Mar. 15, 2012) (quoting Third Circuit decision that if at least four months pass, "no inference of causation is created" and holding that six months does not raise inference of causation).  Accordingly, Plaintiff cannot make a *prima facie* showing of his claim.

Presented with the foregoing, it is Plaintiff's burden to demonstrate Temple's "retaliatory intent." Lichtenstein, 691. F3d at 302; Vanstory-Frazier v. CHHS Hosp. Co., LLC, 827 F. Supp. 2d 461, 475 (E.D. Pa. 2011) (quoting Tex. Dept' of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)) ("the ultimate burden of persuading the trier of fact that the defendant retaliated against the plaintiff remains at all times with the plaintiff"). Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. He "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted [nonretaliatory] reasons." Id. at 765.

"[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action[.]" Id. at 764 (internal citations

omitted). Here, then, Plaintiff must show that Temple's explanation "was so plainly wrong that it cannot have been the employer's real reason." Fichter v. AMG Res. Corp., 528 Fed. Appx. 225, 230 (3d Cir. 2013) (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997)). "The factfinder must be able to infer that the employer did not simply make a bad decision when it took an action against an employee, but that the employer took that action for unlawful reasons." Davis, 2015 U.S. Dist. LEXIS 154213, at *21. As discussed in Section 1 above, Plaintiff cannot make that showing and accordingly his FMLA retaliation claim must fail.

As such, Plaintiff' claims for retaliation under Title VII, Section 1981, and the FMLA all fail, and Counts III, VI, and VIII must be dismissed with prejudice.

### 3. Plaintiff Was Not Subjected to a Hostile Work Environment.

Plaintiff contends that Temple created a "hostile work environment", however, there are no actual facts that support this argument. To establish a prima facie case for a hostile work environment, Plaintiff must show: (1) he suffered intentional discrimination because of his race or disability; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person in the same position; and (5) the existence of *respondeat superior* liability. Sherrod v. Philadelphia Gas Works, 57 F. App'x 68, 75 (3d Cir. 2003), citing West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995). The hostile work environment analysis "must concentrate not on individual incidents, but on the overall scenario." Cardenas v. Massey, 269 F.3d 251, 261 (3d Cir. 2001).

To determine whether a plaintiff has set forth sufficient facts to establish a hostile work environment, courts generally consider the totality of circumstances, including, such

factors as the frequency and severity of the discriminatory conduct, whether the discriminatory conduct is physically threatening or a "mere offensive utterance," and whether it reasonably interferes with an employee's work performance. <u>Walton v. Mental Health Ass'n</u>, 168 F.3d 661, 667 (3d Cir. 2017).

Here, Plaintiff fails to establish all the elements of a *prima facie* case for hostile work environment. As set forth above in Sections 1 and 2, Plaintiff did not experience employment discrimination because of his race or disability. His termination from employment with Temple was for a legitimate and nondiscriminatory reason. And although Plaintiff points to a multitude of alleged incidents that constitute harassment, none of those incidents taken together or individually are sufficiently severe or pervasive to constitute employment discrimination. <u>See</u> <u>Walton v. Mental Health Ass'n</u>, No. 96-5682, 1997 U.S. Dist. LEXIS 18224, 1997 WL 717053, at *1, *13 (E.D. Pa. Nov. 17, 1997) (granting summary judgment on a hostile work environment claim brought under the ADA by an employee suffering depression and obesity because the alleged comments made by her supervisor, such as "you have to separate your problems, symptoms from the project," "you have to learn to manage your illness," "you have to make a decision of either you can work or you're either too sick to work," and "people with your symptoms are manic depressive" were not severe or pervasive), aff'd, 168 F.3d at 667 (agreeing that these comments taken together fall "far short" of the standard set forth in <u>Harris v. Forklift v. Forklift Sys., Inc</u>., 510 U.S. 17 (1993)); <u>Lescoe v. Pa. Dep't of Corr. – SCI Frackville</u>, 464 Fed. Appx. 50, 54 (3rd Cir. 2012) (concluding that frequent "jokes and comments about [plaintiff's] weight, the size of his belly, and not being able to see his groin area" did not reach a level of sufficient severity or pervasiveness to alter the conditions of plaintiff's employment); <u>Hamera v. Cty. of Berks</u>,

248 F. App'x 422, 425 (3d Cir. 2007) (concluding that the nine comments made over a year and four months span were insensitive but did not rise to an actionable level of harassment); Hartwell v. Lifetime Doors, Inc., No. 05-2115,2006 U.S. Dist. LEXIS 6026, at **56-57 (E.D. Pa. Feb. 16, 2006) (concluding that comments made regarding plaintiff appeared to be incidental to, rather than based on his disability; comment that "[plaintiff] would be easier to harm due to his shoulder injury" was a "general taunt more than harassment based on [plaintiff's] injury").

Plaintiff's allegations here, taken separately or together, do not show the existence of a hostile work environment.  For instance, Plaintiff alleges he was subjected to "racist remarks, making hostile remarks, thwart[ed] from properly doing his job, false blame and criticism, defamatory conduct, sabotaging conduct, ignoring plaintiff's efforts to promote diversity…" (See Comp. ¶ 165). The remainder of the allegations related to the hostile work environment only demonstrate that Plaintiff has conflated his frustration with his job with hostility and discrimination.   For example, Plaintiff alleges he was denied the ability to "review candidates for the 'Emerging Scholars Program'" was "not allowed to recruit outside of Philadelphia", = was "not allowed to attend diversity events planned in his office," and was "denied the necessary data, job description, and assistance that he needed to do his job properly…".  (Id. ¶¶ 45, 42, 41, and 39).  However, none of these events are sufficiently severe or pervasive to constitute harassment and none could objectively be viewed as detrimentally affecting his employment.  Even if these bare allegations were supported by actual evidence, which they are not, they do not suffice as a matter of law as severe or pervasive.

As for the alleged racist remarks, Plaintiff only offers vague allegations of "code words for racism against African-Americans and Blacks" because Ms. Mormando and Mr. Van Blunk characterized him as "angry, aggressive and provocative". (Id., ¶ 67). Whether or not Mr. Van Blunk characterized Plaintiff in this manner, it is only his perception and subjective belief that this discriminatory and hostile. Plaintiff's subjective belief that he was harassed because of his race is, without more, insufficient to support an inference of racial discrimination. Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) ("To survive summary judgment, a party must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

Accordingly, all of Plaintiff's hostile work environment claims in Count II should be dismissed because Plaintiff did not suffer an adverse employment action and the allegations of hostile work environment do not meet the required standard of being severe or pervasive.

4.      **Plaintiff's PHRA Disability Discrimination and PHRA Disability Retaliation Claims Fail**

Plaintiff' claims under the PHRA are entirely duplicative of, and comprised of, the allegations that support his ADA claims for discrimination and retaliation. (Comp., Count X, ¶¶ 199-200). The Third Circuit has acknowledged that "the PHRA and the ADA are 'basically the same … in relevant respects[.]'" Buskirk v. Apollo Metals, 307 F.3d 160, 166 n.1 (3d Cir. 2002) (quoting Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002)). As a result, courts "generally interpret the PHRA in accord with its federal counterparts." Id. (internal citations omitted); see also Albright, 2019 U.S. Dist. LEXIS, at *27 n.4; Davis, 2015 U.S. Dist. LEXIS 154312, at *16 (addressing ADA and PHRA retaliation as synonymous), *24 (acknowledging Third Circuit holdings noted above).

Because Plaintiff' PHRA claims are analogous to his ADA claims, and therefore analyzed under the same framework, they too fail for all of the reasons detailed above in Sections 1-3 and should be dismissed.

## IV.    <u>CONCLUSION</u>

In light of the foregoing, Defendants respectfully request that this Court grant summary judgment in their favor on Counts I, II, III, IV, V, VI, VII, VIII, and IX Plaintiff and dismiss those claims with prejudice.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated:  October 7, 2021

/s/ Joe H. Tucker, Jr.
Joe H. Tucker, Jr. Esquire
Jessica Rickabaugh, Esquire
Brock J. Atkins, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
Attorneys for the Temple Defendants

## CERTIFICATE OF SERVICE

I, Joe H. Tucker, Jr., Esquire, hereby certify that on this date, I caused to be served

a true and correct copy of the Temple Defendants' Partial Motion for Summary Judgment

upon the following counsel via court filing notification:

Reginald Allen, Esquire
7601 Crittenden Street, F12
Philadelphia, PA 19118

**TUCKER LAW GROUP, LLC**

Dated:  October 7, 2021                /s/ Joe H. Tucker, Jr.
                                       Joe H. Tucker, Jr. Esquire
                                       Jessica Rickabaugh, Esquire
                                       Brock J. Atkins, Esquire
                                       Attorneys for the Temple Defendants