IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYREE WILLIAMS,<br><br>  Plaintiff,<br><br>  v.<br><br>TEMPLE UNIVERSITY – OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, et al.<br><br>  Defendants. | Civil Action<br><br>No.2:20-CV-02219-AB |

### Temple University's Statement of Undisputed Facts

1. Tyree Williams ("Plaintiff") was employed from December 12, 2016 until May 9, 2019 as an Assistant Director of Multicultural Affairs at Temple University ("Defendant" and/or "Temple"). (See Exhibits "A" and "B")

2. Plaintiff was terminated from his position after he had three (3) or more days of unapproved absences from work in violation of Temple's Employer's Rules of Conduct. (See Exhibit "B")

3. Plaintiff's direct supervisor was James Van Blunk ("Mr. Van Blunk"), who was/is the Senior Associate Director of Undergraduate Admissions at Temple. (See Deposition of James Van Blunk ("Van Blunk Dep."), with relevant excerpts attached hereto as Exhibit "C", at 7:3-6.)

4. Karin Mormando ("Ms. Mormando") was/is the Director of Undergraduate Admissions and the direct supervisor of Mr. Van Blunk and the second level supervisor of Plaintiff. (See Deposition of Karin Mormando ("Mormando Dep."), with relevant excerpts attached hereto as Exhibit "D", at 7:8-21.)

5. Ms. Mormando reports to Shawn Abbott ("Mr. Abbott") who is the Vice Provost for Admissions Financial Aid and Enrollment Management at Temple University.  (See Deposition of Shawn Abbott ("Abbott Dep."), with relevant excerpts attached hereto as Exhibit "E", at 7:14-16).

6. As the Assistant Director of Multicultural Affairs, Plaintiff was responsible for the City of Philadelphia territory, which involved meeting with high school counselors, high school students, community-based organizations off campus, planning on-campus events, working with Admissions staff, and making admissions decisions.  (See Exhibit "D", Mormando Dep, 9:9-17; Exhibit "F", Assistant Director of Admissions Job Description.).

7. The Admissions Office allows for the staff to work from home during the fall semester during the application reading period, which is when the Admissions staff are primarily reviewing applications for admissions.  (See Admissions Department work from home policy, attached hereto as Exhibit "G").

8. As the only person on the Admissions staff with "multicultural affairs" in his title, Plaintiff' duties included spear heading the efforts of the Admissions staff to increase and enhance diversity at Temple.  But it was every Admissions counselor's "responsibility to recruit students and to diversity the incoming class."  (See Van Blunk Dep., 9:7-16, Exhibit "C").

9. Although Plaintiff believed he should travel out of the state to recruit students of color, it was not the expectation of his supervisors that he does so, nor was it in the budget. "That was a plan that eventually would come to fruition but his main territory

was the City and County of Philadelphia... due to lack of resources, we didn't have that happen." (See Exhibit "C", Van Blunk Dep., 8:13-20)

10. Courtney Bradshaw, the current person in Plaintiff former position, who is African American, also does not travel out of the state for recruitment purposes either. (See Exhibit "D", Mormando Dep., 11:9-17).

11. Despite Plaintiff working for Temple from December 12, 2016 to May 9, 2019, he only worked one complete recruitment cycle, which was the fall of 2017.   (See Exhibit "C", Van Blunk Dep., 16:18-22).

12. Mr. Van Blunk prepared an employee evaluation of Plaintiff for the fall 2017 and spring 2018 academic year.  The performance evaluation at that time was generally positive for Plaintiff. (See Performance Evaluation, attached as Exhibit "H")

13. However, in the spring of 2018, a counselor from Central High School, a large and important "feeder" school to Temple, complained about Plaintiff.  The allegations were serious enough that a meeting at Central High School occurred between Ms. Mormando, Mr. Van Blunk and Central's school administration.  In that meeting, it was determined that Plaintiff would no longer recruit or visit Central High School and Mr. Van Blunk would instead be the recruiter for Central. (See Exhibit "C" and "D", Van Blunk Dep., 29:1-30:4 , Mormando Dep.,38:5-9)

14. According to Mr. Abbott, the complaint from Central was a serious concern to Temple.  "I have been a University admission officer for 25 years. I was the Dean of Admissions at NYU for almost a decade. Director of admissions at Stanford University for four years, worked on the admissions committee at Columbia University for almost a decade and I spent two years at Boston University and I can't think of more than a

handful of times in 25 years where a high school, especially one that is important to us, Central High School which is our large feeder, would actually proactively complain about an admission officer." (See Exhibit "E", Abbott Dep., 14:14-24).

15. In addition, during the summer of 2018, Plaintiff had a heated exchange with a colleague during a human resources led team building event at the Admissions Department annual retreat.  This argument was observed by much of the Admissions staff, but also, Eric Brunner, a human resources administrator at Temple that was leading the team building exercise.(See Exhibit "D", Mormando Dep., 75:12-23).

16. On September 6, 2018, the Temple Progressive NAACP, a student organization at Temple, wrote Ms. Mormando to complain about Plaintiff behavior and lack of professionalism at a September 4, 2018 on-campus program in which Plaintiff attended and offended the attendees. (See Email from Margot Janae Demus, attached hereto as Exhibit "I").

17. On September 10, 2018, another school counselor, this time from Palumbo High School, contacted the Admissions Office to complain about Plaintiff' lack of professionalism and poor communication skills.  (See Email from Christine Donnelly, attached hereto as Exhibit "J").

18. Because of Plaintiff's increasing number of incidents of inappropriate behavior, Plaintiff was referred for communication coaching with an Eric Brunner, an experienced Learning and Development Human Resources administrator.  (See September 27, 2018 email from Eric Brunner to Ms. Mormando and Mr. Van Blunk and email from Eric Brunner to Plaintiff, attached hereto as Exhibit "K" and K2"; and Exhibit "D", Mormando Dep., 75:24-76:8).

19. Plaintiff began to call out sick and on October 8, he applied for Family Medical Leave, to be backdated starting on October 1, 2018.  (See FMLA Correspondence, attached hereto as Exhibit "L").

20. Several of Plaintiff's social media posts came to the attention of Mr. Abbott that caused Mr. Abbott concern related to the professionalism of Plaintiff. (See email from Shawn Abbott to Ms. Mormando and screenshots of the posts, attached hereto as Exhibit "M").

21. While Plaintiff was on leave, a performance improvement plan ("PIP") was prepared by Mr. Van Blunk and the Director of Labor Relations, Deirdre Culbreath-Walton.  (See PIP, attached hereto as Exhibit "N").

22. Because Plaintiff was on leave, a copy of the PIP was never provided to Plaintiff nor was the PIP ever discussed with him.

23. Plaintiff was given an extension to complete the FMLA paperwork by November 19, 2018 by a Human Resources Specialist at Temple.  (See letter from Molly Mcaffrey, attached hereto as Exhibit "O").

24. After Plaintiff's initial FMLA request was denied because his provider did not complete the requisite paperwork, Thomas Johnston, the Director, Workers' Compensation and Absence Management from Temple University, ("Mr. Johnston") contacted Plaintiff's provider from Temple's Tuttleman Counseling Center and her supervisor in order to assist Plaintiff in completing the requisite paperwork and gain approval for his FMLA leave.  (See email from Mr. Johnston, attached hereto as Exhibit "P").

25. Consequently, after the provider completed the requisite paperwork, Plaintiff's FMLA was approved.

26. Plaintiff exhausted his FMLA leave allotment on January 17, 2019 and was required to return to work.  (See FMLA Exhaustion letter, attached hereto as Exhibit "Q").

27. In January of 2019, Plaintiff another requested an extension to the leave.

28. Plaintiff was approved for the University Leaee of Absence.  And although Plaintiff medical provider did not properly complete the requisite paperwork for an extension, after Temple granted him an extension to submit the requisite documentation, Plaintiff's leave was extended from January 18, 2019 to February 24, 2019. (See correspondence from Mr. Johnston to Plaintiff, attached hereto as Exhibit "R").

29. On January 25, 2019, Plaintiff met with Tracey Hamilton ("Ms. Hamilton"), the Assistant Director of Equal Opportunity Compliance ("EOC") with Temple and filed a complaint alleging he was experiencing racial prejudice.   (See Plaintiff's EOC submission, attached hereto as Exhibit "S").

30. As part of her EOC investigation, Ms. Hamilton met with Ms. Mormando and Mr. Van Blunk.  Accordingly, they were aware of the investigation and generally aware of Plaintiff's complaints. (See Van Blunk Dep., 23:14-25:22).

31. While Plaintiff was on leave, Mr. Johnston contacted Plaintiff to advise him of the option of the Short-Term Disability Benefits in order to provide income replacement. (See Exhibit "EE").

32. In an effort to accommodate Plaintiff' eventual return to work, and while he was still on leave, Temple agreed to Plaintiff's unusual request that his supervisors and he attend a mediation.  (See February 21, 2019 email from Plaintiff to Mr. Johnston accommodating Plaintiff's request for a mediation, attached hereto as Exhibit "T").

33. Plaintiff insisted that another Temple employee and his fraternity brother, NuRodney Pratt, attend the mediation(s).  Because Mr. Pratt did not work in Plaintiff' department and did not have any supervisory or subordinate role to Plaintiff, Mr. Pratt was permitted to attend with restrictions that were articulated in an email to Plaintiff by Mr. Johnston.  (See emails exchanged between Mr. Johnston and Plaintiff, attached hereto as Exhibit "U").

34. While at the mediation, Plaintiff complained about Ms. Mormando and Mr. Van Blunk and stated that they both should be fired.  (See Mormando Dep., 54:9-18)

35. Plaintiff was advised that if decided to not attend the mediation scheduled for February 27th, he would need to provide medical documentation to extend his leave, including a medical diagnosis and return to work date.  "Failure to forward the appropriate paperwork by Wednesday, March 6, 2019 could result in the denial of your [Plaintiff] request to extend your leave of absence."  (See Exhibit "U").

36. The mediations spanned the length of two business days, February 27, 2019 and April 15, 2019 and were attended by Plaintiff two supervisors, Ms. Mormando and Mr. Van Blunk as well as two mediators, Ms. Culbreath-Walton and Felisha Brown, both from the Labor Relations Department.

37. Plaintiff's UOL extensions were as follows:
    - January 18, 2019 – February 24, 2019

- February 25, 2019 – March 25, 2019

- March 26, 2019 – April 7, 2019

- April 8, 2019 – April 23, 2019

(See Timeline of Leave History, attached hereto as Exhibit "V")

38. As with each extension of the ULOA, Plaintiff was advised that in order to return to work Plaintiff needed to submit a completed Fitness for Duty Certification on March 25, 2019.  (See Exhibit "X").

39. Plaintiff accommodation requests sought the ability to work from home "as needed". (See Records of Gustavo Klurfan, attached hereto as Exhibit "Y")

40. The accommodation request was discussed by and between Mr. Abbott, Ms. Mormando, Mr. Van Blunk, Mr. Johnston, Ms. Culbreath-Walton and Ms. Brown.  (See Deposition of Felisha Brown, ("Brown Dep.") 11:17-22; relevant excerpts attached hereto as Exhibit "Z").

41. Through conversations with the Admissions Department, and an email by Mr. Abbott discussing the operational needs to the Admissions Department, it was determined that Plaintiff requested accommodation to work from home as needed could not be accommodated.

42. Ms. Culbreath-Walton and Ms. Brown worked with the Admissions Department to "see what they would be able to accommodate.  And they provided us with the justification based on their operational needs that one day a month is what they would be able to accommodate." (See Exhibit "Z", Brown Dep., 13:15-20).

43. "There were E-mail conversations along with phone conversations discussing his request [Plaintiff] by myself and Ms. Walton." (See Exhibit "Z", Brown Dep., 13:24-14:2).

44. Vice Provost Shawn Abbott articulated the reasons that Plaintiff's request to work from home as needed could not be accommodated:

> admissions counselors to our directors, all the way up to me personally [Vice Provost Shawn Abbott] are the front line ambassadors for Temple University. As a result, we need to be on campus ready, willing, able and eager to meet with the prospective students, families and counselors who visit us daily. This cannot be done from home and we need to be available at all times we are not engaged in off-campus outreach and recruitment. We anticipate 50,000 visitors to Temple next year and our admission officers are the staff members Temple relies on heavily to give daily information sessions and provide one on one counseling to our visitors who want to learn more about the admission and financial aid process… Please know that I am not against working from home or flexible working hours. For certain positions within the Division of Enrollment Management, working from home and/or a more flexible working schedule is mutually beneficial as the nature of our work may benefit from solitude and/or involved limited or no face to face contact with either internal or external constituents. Our admission officers, however, are entirely front facing and mut engage daily, if not hourly with both internal and external constituents.

(See email from Shawn Abbott, attached hereto as Exhibit "AA")

45. Plaintiff attempted to return to work without an agreement on the necessary accommodations and without the determination by a medical provider that he was fit to return to work. Consequently, he was sent back home. (See Complaint, ¶¶ 107, 114).

46. Plaintiff was informed that Temple could not accommodate his request and instead offered him the ability to work from home once a month. (See Interactive Process emails, attached hereto as Exhibit "BB", and formal accommodation offered by Temple, attached as Exhibit "FF").

47. Deirdre Culbreath-Walton and Felisha Brown sent several emails to Plaintiff advising him that he is not authorized to work unless he accepts their proposed accommodation or have another suggestion/solution for the University to consider. (See emails discussing other possible accommodations, attached hereto as Exhibit "CC").

48. At some point, Plaintiff severed his relationship with his psychotherapist, Gustavo Klurfan. Gustavo Klurfan did not work for Temple.  (See Exhibit "CC").

49. Plaintiff was contacted via email by Mr. Johnston and Ms. Culbreath several times regarding the need to either (1) propose an alternative accommodation request, (2) accept of the proposed accommodation offered by Temple, or (3) take a medical leave of absence.  (See emails, attached hereto as Exhibit "DD")

50. Plaintiff neither accepted the offered accommodation nor proposed a new accommodation by May 6th.  (See Exhibit ""DD").

51. Plaintiff was made aware on May 7th that Ms. Culbreath needed to talk with him because Mr. Willias had not completed his required tasks related to his leave and accommodation requests.  (See May 7 email from Ms. Culbreath, attached hereto as Exhibit "DD").

52. Despite the urgency in Ms. Culbreath's message to Plaintiff, Plaintiff responded: "Thank you for your email, unfortunately I am not available at this exact moment but I would like the opportunity to set up a time to discuss this further in person with you and anyone else that would be involved with making this decision. Please let me know your availability."  (See May 6, 2019 email from Plaintiff, attached hereto as Exhibit "DD").

53. Plaintiff never accepted the proposed accommodation, offered an alternative accommodation, or applied for a medical leave of absence.

54. As of May 9, 2019, Plaintiff was advised in writing that he was terminated for being absent without leave.  (See May 9, 2019 Termination letter, attached hereto as Exhibit "B").

Respectfully submitted,

|  |  |
|---|---|
|  | **TUCKER LAW GROUP, LLC** |
| Dated: October 7, 2021 | /s/ Joe H. Tucker, Jr. |
|  | Joe H. Tucker, Jr. Esquire |
|  | Jessica Rickabaugh, Esquire |
|  | Brock J. Atkins, Esquire |
|  | Ten Penn Center |
|  | 1801 Market Street, Suite 2500 |
|  | Philadelphia, PA 19103 |
|  | (215) 875-0609 |
|  | Attorneys for the Temple Defendants |